UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TAKEYLYN G.,

                        Plaintiff,

v.                                                                           1:18-CV-292 (ATB)

ANDREW M. SAUL, [1]
Comm'r of Soc. Sec.,
                        Defendant.

---

APPEARANCES:                                    OF COUNSEL:

TAKEYLYN G.
 Plaintiff, appearing *Pro Se*
2033 Avenue A
Schenectady, NY 12308

U.S. SOCIAL SECURITY ADMIN.         DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Takeylyn G. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

73.1, and the consent of the parties. (Dkt. Nos. 4, 5). The parties have each filed briefs (Dkt. Nos. 12 and 14) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 9.)[2]

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1981, making her 32 years old at the alleged onset date and 35 years old at the date of the ALJ's decision. Plaintiff reported obtaining a GED and previously working as a nurse assistant (as identified by the vocational expert ("VE") at the administrative hearing). At the initial level, Plaintiff alleged disability due to epilepsy with uncontrolled seizures.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on April 29, 2014, as well as Supplemental Security Income on May 2, 2014, alleging disability beginning April 6, 2014. Plaintiff's applications were initially denied on August 11, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ David F. Neumann on August 15, 2016, at which a VE also testified. (T. 26-61.) On February 6, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 8-25.) On January 10, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-5.)

---

[2] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. (T. 13-21.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. (T. 13.) The ALJ determined that Plaintiff engaged in substantial gainful activity from June 2016 through the date of the decision, but that there had been a continuous 12-month period during which she did not engage in substantial gainful activity. (T. 13-14.) The ALJ further found that Plaintiff has severe impairments including obesity and seizures. (T. 14.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 through the date last insured. (T. 14-15.) Specifically, the ALJ gave special consideration to Listings 11.02 (epilepsy) and Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p. (*Id.*) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work

> except [she] can lift and carry 10 pounds frequently and 20 pounds occasionally; can stand or walk with normal breaks for a total of 2 hours in an 8-hour workday; can sit with normal breaks for a total of 8 hours in an 8-hour workday; can perform pushing and pulling motions with the upper and lower extremities within the limitations for lifting and carrying; should avoid unprotected heights and moving machinery; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid climbing ropes, ladders, and scaffolds.

(T. 15.) The ALJ found Plaintiff is unable to perform any past relevant work. (T. 19.) The ALJ then determined there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 20-22.) The ALJ therefore concluded Plaintiff is not disabled. (T. 21.)

### D. Issues in Contention

In Defendant's brief, he argues that Plaintiff must not be found disabled for the period beginning in June 2016 and that, for the period before June 2016, substantial evidence supports the ALJ's finding that Plaintiff was capable of performing other work. (Dkt. No. 12 at 15-22.) Specifically, Defendant contends that substantial evidence supports the ALJ's RFC finding and that Plaintiff was capable of performing other work. (*Id*. at 17-22.)

Plaintiff, appearing *pro se* in this action, filed a brief arguing the ALJ's decision is not supported by substantial evidence. (Dkt. No. 14 at 16-22.) Specifically, Plaintiff contends the ALJ failed to properly consider the severity of her seizures in combination with painful headaches, the severity of her headaches as a neurological disorder, or the side effects of her medications. (*Id*. at 16-17, 20.) Plaintiff argues that her seizures in combination with her chronic headaches should have been found to equal a severe impairment. (*Id*. at 16-17.) Plaintiff states her epilepsy diagnosis includes her seizures and headaches. (*Id*. at 18.)

Plaintiff further contends the ALJ did not afford proper weight to the opinions of her treating physicians and maintains that the March 2015 medical statement referenced by the ALJ and Defendant is not from her primary care physician Neema Afejuku, M.D., but rather is from her neurologist Konstantin Timofeev, M.D. (*Id*. at 17-22.) Plaintiff also indicates the ALJ mischaracterized her limitations in discussing her activities of daily living. (*Id*. at 19.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

5

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. The ALJ's Analysis of the Severity of Plaintiff's Impairments at Step Two is Supported by Substantial Evidence or Involves Only Harmless Error

#### 1. Applicable Law

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920. Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and

6

carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id*. (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

The failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

7

At Step Two, the ALJ found Plaintiff has severe impairments including obesity and seizures. (T. 14.) Plaintiff argues that (a) the ALJ failed to properly consider the severity of her seizures in combination with painful headaches, the severity of her headaches as a neurological disorder, or the side effects of her medications, (b) her seizures in combination with her chronic headaches should have been found to equal a severe impairment, and (c) her epilepsy diagnosis includes her seizures and headaches. (Dkt. No. 14 at 16-18, 20.) The Court finds these arguments unpersuasive.

Here, the ALJ did find at least one physical impairment to be severe and continued the sequential evaluation, which reflected his consideration of evidence related to the impairments that he found non-severe. (T. 14-21.) *Fuimo*, 948 F. Supp. 2d at 269-70 (N.D.N.Y. 2013); *Reices-Colon v. Astrue*, 523 F. App'x at 798. The ALJ explained that Plaintiff's headaches were found non-severe because her medication had been noted to help her headaches. (T. 14.) The ALJ also stated that, because Plaintiff's migraine and headache symptoms overlapped with her seizures, he had, in his RFC analysis, accounted for the functional limitations resulting from all of her medically determinable impairments, including those that the ALJ found non-severe. (*Id*.)

Although Plaintiff seems to argue that the ALJ failed to properly characterize her epilepsy as inclusive of both seizures and headaches, the Court is not persuaded and finds any failure by the ALJ to find Plaintiff's headaches severe to be harmless error. The ALJ's RFC analysis referenced treatment records showing Plaintiff had a history of epilepsy and headaches. (T. 16-17.) He again noted her medication had helped her headaches and that her epilepsy and migraines were described as stable on medication in April 2015. (T. 17, 198, 245.) The ALJ's overall decision reflects adequate consideration of Plaintiff's severe and non-severe impairments, as well as the related limitations. The Court finds remand is therefore not required on this basis.

### B. The ALJ's Analysis of the Medical Opinion Evidence was Tainted by Legal Error and is not Supported by Substantial Evidence

#### 1. Applicable Law

##### a. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the

9

claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

## 2. Relevant Evidence

### a. Treating Source Opinions

In May 2014, Plaintiff's primary care provider Dr. Afejuku in conjunction with Theresa Ward, PA-C, noted Plaintiff's epilepsy was currently uncontrolled and she was working with neurology to improve control. (T. 215.) They found no evidence of specific limitations aside from her being very limited in the ability to function in a work setting at a consistent pace. (T. 216, 224.) They also indicated she was unable to work or drive at that time as her seizures were unpredictable and she could put herself or others at risk. (*Id*.) Her conditions were expected to last 1-3 months. (*Id*.) The ALJ gave this opinion limited weight as Dr. Afejuku stated Plaintiff's restrictions were expected to last only three months and Plaintiff subsequently returned to part-time and then full-time work. (T. 19.)

In March 2015, Plaintiff's treating neurologist Dr. Timofeev noted Plaintiff had been his patient for seven years and her conditions included generalized seizure disorder and headaches. (T. 229-30.) He found no physical limitations, but opined that Plaintiff was very limited in understanding and remembering instructions, making simple decisions, and functioning in a work setting at a consistent pace; moderately limited in carrying out instructions; and moderately-to-very limited in maintaining attention and concentration. (T. 227, 230.) He indicated Plaintiff should not engage in work involving machinery or heights, open fire or hot objects, or assembly lines; and he noted that her restrictions were permanent. (*Id*.) In discussing this opinion, the ALJ incorrectly identified it as being from Plaintiff's primary care provider Dr. Afejuku. (T. 19.) The ALJ stated that the opinion was given little weight "as it is not consistent

10

with findings at both consultative examinations of normal mental status results." (T. 19, 217-19, 253-61.) The ALJ also stated, "[f]urthermore, after the claimant had a breakthrough seizure on September 15, 2015, Dr. Afejuku released the claimant back to work 8 days later." (T. 19, 221.) The ALJ gave this release significant weight as it was from a treating source and was "consistent with evidence that the claimant was not taking her medication as prescribed when she had that breakthrough seizure." (T. 19, 238.) The ALJ provided no other discussion or analysis of the March 2015 opinion. (T. 19.)

The ALJ noted that Plaintiff's neurologist stated in October and November 2015 that she was to remain out of work, that Plaintiff was returned to work in December 2015 on a limited/part-time basis, and that she was advised to stay out of work for one month in September 2016. (T. 19, 197, 250-52.) The ALJ gave limited weight to these statements "as they [were] all temporary restrictions and do not indicate [her] limitations on a permanent basis" and were "not consistent with the opinion of the consultative examiner, who noted only that the claimant had restrictions regarding hazards in the workplace." (T. 19, 217-19, 253-61.)

### b. Dr. Puri's Consultative Opinions

In August 2014, Dr. Puri conducted a neurological consultative examination noting diagnoses of generalized seizures and high blood pressure. (T. 219.) She opined Plaintiff did not have any objective limitations with communication, fine motor, or gross motor activity and indicated that there were no objective limitations to Plaintiff's gait or to her activities of daily living on examination. (*Id*.) She recommended that Plaintiff not work from heights, with heavy machinery, or be allowed to drive secondary to her history. (*Id*.)

In September 2016, Dr. Puri conducted a second neurological consultative examination noting diagnoses including generalized seizures (complex partial), chronic headaches, and

11

obesity. (T. 255.) She again opined that Plaintiff did not have any objective limitations in communication, fine motor, or gross motor activity and noted that there were no objective limitations to her gait or to her activities of daily living on examination. (*Id*.) She again recommended that Plaintiff not work from heights, with heavy machinery, or be allowed to drive secondary to her history. (*Id*.) More specifically, Dr. Puri opined that Plaintiff could continuously lift and carry up to 20 pounds; occasionally lift and carry up to 50 pounds; sit for four hours at a time for a total of eight hours; stand for two hours at a time for a total of six hours; walk for two hours at a time for a total of four hours; continuously reach, handle, finger, feel and push/pull with her upper extremities; continuously use her feet for operation of foot controls; frequently climb stairs and ramps, stoop, kneel, crouch and crawl; never climb ladders or scaffolds or balance; tolerate loud noise, continuously tolerate humidity and wetness, pulmonary irritants and vibrations; and never tolerate conditions involving unprotected heights, moving mechanical parts, operating a motor vehicle or extreme heat/cold. (T. 256-61.)

The ALJ gave Dr. Puri's opinions great weight because they were from an examining source who was an expert in the area of neurology and they were consistent with the record as a whole including "unremarkable physical examinations and notes that [Plaintiff's] seizures [had] been fairly well controlled." (T. 18-19, 217-19, 231-49, 253-61.)

    3. **Analysis**

Plaintiff has generally argued that the ALJ failed to properly consider her impairments and related symptoms, analyze the medical and other evidence, and determine her RFC. (Dkt. No. 14 at 16-22.) The Court finds support for Plaintiff's argument that the ALJ did not properly consider the March 2015 opinion from her neurologist Dr. Timofeev for the following reasons, and will order a remand for further administrative proceedings. (*Id*. at 17-22.)

As Plaintiff points out, the March 2015 opinion contained in Exhibit B4F is stamped by neurologist Dr. Timofeev and seemingly signed by him, rather than her primary care physician Dr. Afejuku. (*Id*.) Defendant's brief also misidentifies Dr. Timofeev's March 2015 opinion as being from Dr. Afejuku. (Dkt. No. 12, at 19.) A simple misidentification of a medical source by itself may not necessarily warrant remand, but the circumstances here leave the Court unable to find that the ALJ properly considered this treating physician opinion. (T. 19.)

The ALJ's mistake makes it clear he did not consider Dr. Timofeev's specialization as Plaintiff's neurologist and implicitly found the opinion was inconsistent with a subsequent release to work in September 2015 after a breakthrough seizure without realizing such release was from a different physician. (T. 19, 221.) This mistake is further compounded by the fact that the ALJ gave Dr. Puri's opinions great weight in part because she was an expert in the area of neurology, again without acknowledging that Plaintiff's treating neurologist had opined she had permanent restrictions in understanding and remembering instructions, making simple decisions, functioning in a work setting at a consistent pace, carrying out instructions, and maintaining attention and concentration. (T. 18-19, 227, 230.)

The ALJ's failure to correctly identify the source of the March 2015 opinion and accurately analyze said opinion leaves this Court unable to find that he properly considered the medical opinion evidence in order to determine Plaintiff's RFC. Remand is therefore required on this basis.

**C. The ALJ's Evaluation of Plaintiff's Symptoms and the Step Five Determination**

Because remand is required on other grounds, the Court declines to reach findings on the ALJ's evaluation of Plaintiff's symptoms. However, the ALJ's error in his analysis of the medical opinion evidence tainted his RFC analysis and his Step Five determination. On remand, the ALJ should conduct a new analysis pertaining to Plaintiff's RFC and symptoms, as well as a new Step Five determination.

**WHEREFORE**, based on the findings in the above Decision and Order, it is hereby

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper analysis of the opinion evidence and other further proceedings, consistent with this Decision and Order.

Dated: July 26, 2019
Syracuse, New York

_____
Andrew T. Baxter
U.S. Magistrate Judge